LINDA D. DRUMMER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Drummer v. Commissioner
Docket No. 9226-92
United States Tax Court
T.C. Memo 1994-214; 1994 Tax Ct. Memo LEXIS 214; 67 T.C.M. (CCH) 2963; May 16, 1994, Filed *214 Decision will be entered under Rule 155. For petitioner: William C. Gambel. For respondent: Joseph Ineich. WELLS
WELLS
MEMORANDUM FINDINGS OF FACT AND OPINION WELLS, Judge: Respondent determined the following deficiencies in and additions to petitioner's Federal income taxes: Additions to Tax
Sec.
Sec. Sec. Sec. Sec. Year
Deficiency
6653(b)(1)
6653(b)(1)(A)
6653(b)(1)(B)
6654 6661 1986
$ 11,488
--
$ 14,357
[1]
$ 305
$ 4,518
1987
6,686
--
5,015
[1]
363
--
1988
7,887
$ 5,915
--
--
504
--
Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. After a concession, [1] the issues for decision are: (1) Whether petitioner may exclude from income her one-half share of community income pursuant to section 66 for taxable years 1986, 1987, and 1988; (2) whether petitioner is liable for additions to tax for fraud under section 6653(b) for the taxable years in issue; (3) whether petitioner is liable for additions to tax for failure to pay *215 estimated tax under section 6654 for the taxable years in issue; and (4) whether petitioner is liable for an addition to tax for substantially understating income tax under section 6661 for taxable year 1986. FINDINGS OF FACT Some of the facts and certain documents have been stipulated for trial pursuant to Rule 91. The stipulations are incorporated in this Memorandum Opinion by reference. At the time she filed her petition, petitioner resided in New Orleans, Louisiana. Petitioner was married to Joel Drummer (Mr. Drummer) for approximately 27 years, including all of the years in issue. Petitioner and Mr. Drummer have four children (the children). On July *216 24, 1990, petitioner was divorced from Mr. Drummer. During 1976, petitioner and Mr. Drummer started operating several businesses in a low-income area of New Orleans, Louisiana. During the years in issue, the businesses included La Parisienne Liquor and Food Mart (the store) and La Parisienne Body Shop (the body shop). [2] Additionally, during the years in issue, petitioner and Mr. Drummer owned and managed several residential rental properties (the rental properties). [3]
Mr. Drummer was primarily responsible for the daily operation of the businesses. He managed the store and the body shop, and he collected rent from the tenants of the *217 rental properties. Petitioner was also involved with the operation of the businesses. Almost every day, prior to the years in issue, she worked in the store. She also assisted Mr. Drummer in ascertaining selling prices of all of the items in the store. During the years prior to the years in issue, petitioner would occasionally collect money from the store and the rental properties. Additionally, petitioner was responsible for depositing a portion of the money collected from the businesses into joint bank accounts and for paying the bills. Because Mr. Drummer would retain some of the money to pay business and personal expenses, however, not all of it was deposited. After paying such expenses, he would give the balance to petitioner to deposit. During 1982, petitioner and Mr. Drummer built a two-story brick home at 6061 Wright Road, New Orleans, Louisiana (the Wright Road residence), where they lived until their divorce. Prior to 1982, they lived in the same neighborhood as their businesses, in one of the units, at 1725 Bayou Road, which they later rented out to tenants. Once the Wright Road residence was completed, however, petitioner rarely worked at the store, and merely *218 substituted for Mr. Drummer when he was unavailable. Additionally, by 1986, Mr. Drummer made all deposits to the bank, rather than petitioner. Petitioner, however, still wrote checks for business expenses and for personal expenses such as mortgage payments on the Wright Road residence. Generally, Mr. Drummer deposited money each time a check needed to be written. However, he deposited only the amount needed to cover the check or checks. Petitioner and Mr. Drummer failed to file Federal income tax returns for taxable years 1977 through 1983. Consequently, during 1984, Internal Revenue Service (IRS) Revenue Agent Charles Atkins (Agent Atkins) began an audit of their taxable years 1977 through 1983 (the first audit). Agent Atkins discovered that petitioner and Mr. Drummer did not have records of all of the checks that they had written or of any income that they had received from their businesses or the rental properties. Petitioner and Mr. Drummer's records were inadequate, and they often used cash. Consequently, Agent Atkins reconstructed their income using an indirect method. During 1977 through 1983, because they opened a new account each time they overdrew an account, petitioner *219 and Mr. Drummer had operated through approximately 26 different joint bank accounts. Petitioner had signatory authority over all of them. Petitioner, Mr. Drummer, and the children often would take items from the store for their personal use. Prior to Agent Atkins' examination, petitioner and Mr. Drummer had never taken a physical inventory of the store. In response to a request by Agent Atkins that a physical inventory be taken, petitioner, Mr. Drummer, and their children completed their first inventory. In surveying the records that petitioner and Mr. Drummer had provided, Mr. Atkins found prepared, but unfiled, tax returns for taxable years 1976 through 1979. Subsequently, petitioner and Mr. Drummer provided Agent Atkins with similarly prepared, but unfiled, returns for taxable years 1980 and 1981. Using information from petitioner and Mr. Drummer, records received from the bank, and the unfiled tax returns, respondent determined deficiencies totaling $ 30,192 from unreported income for taxable years 1977 through 1983. Respondent also determined additions to tax for fraud under section 6653(b) totaling $ 15,095 for taxable years 1977 through 1983. Additional assessments *220 were made against Mr. Drummer for taxable years 1977 through 1983 for approximately $ 56,632. At the conclusion of the examination, Agent Atkins conducted a conference with petitioner and Mr. Drummer to explain the deficiencies and the additions to tax. Subsequently, petitioner and Mr. Drummer signed a consent agreeing to their tax liability and the additions to tax for taxable years 1977 through 1983. Agent Atkins also advised petitioner and Mr. Drummer of their duty to keep accurate records as well as their duty to file annual tax returns. During the conference, petitioner specifically acknowledged that she knew that tax returns were due each year. Neither petitioner nor Mr. Drummer was represented by counsel during the first audit. For taxable years 1986 through 1988, petitioner did not file tax returns, either jointly with Mr. Drummer or separately. Respondent became aware of petitioner's failure to file returns in the process of collecting the taxes determined to be due during the first audit. On July 12, 1989, an unsigned, reconstructed joint 1986 Form 1040 for petitioner and Mr. Drummer was submitted to respondent's collection division. Although the return was not *221 signed by petitioner or Mr. Drummer, it was processed by respondent. During October 1989, IRS Revenue Agent Susan Davis (Agent Davis) commenced an examination of petitioner and Mr. Drummer's taxable years 1986, 1987, and 1988 (the second audit). Agent Davis contacted petitioner at the Wright Road residence to arrange an initial interview. Petitioner suggested, instead, that Agent Davis contact Mr. Drummer at the store. Agent Davis promptly contacted Mr. Drummer, met with him, and inspected the various businesses on several occasions. During one of Agent Davis' visits to the store, she noticed, parked nearby, a new 1989 Lincoln Town Car which Mr. Drummer had leased for petitioner and on which he was paying approximately $ 500 a month in lease payments. During 1989, petitioner and Mr. Drummer opened a home health care business with $ 4,500 that Mr. Drummer had given petitioner during 1988. Agent Davis also drove by petitioner and Mr. Drummer's Wright Road residence to assess their standard of living. Agent Davis requested both personal and business records from Mr. Drummer for taxable years 1986 through 1988. While Agent Davis had to make several requests before Mr. Drummer *222 provided her with any records, she ultimately received, in a piecemeal manner, 56 grocery bags full of disorganized bank statements and canceled checks. Because the records were inadequate, Agent Davis used a summons to obtain more complete records from Liberty Bank. Agent Davis reviewed and catalogued each check she obtained. During 1986, petitioner and Mr. Drummer had five checking accounts at Liberty Bank. During 1987 and 1988, they maintained three checking accounts at Liberty Bank. [4] Petitioner had signatory authority over all of the accounts. As some of the checks were missing, Agent Davis was unable to analyze all of the checking account activity. For example, during taxable year 1986, petitioner or Mr. Drummer wrote checks, totaling approximately $ 46,000, on one of the accounts, but Agent Davis had not been able to obtain any checks to document who the payee or payees were. During the years in issue, petitioner wrote numerous *223 checks from the joint checking accounts. During 1986, 1987, and 1988, petitioner signed checks from the personal accounts totaling $ 41,859.16, $ 33,814.02, and $ 52,339.90, for such years, respectively, for-a total of $ 128,013.08 over all 3 years. [5] *224 During 1986, 1987, and 1988, petitioner signed checks from the joint business checking accounts in the amounts of $ 40,947.08, $ 13,799.40, and $ 2,632.47, respectively, for a total of $ 57,378.95. [6] During 1986, 1987, and 1988, petitioner signed personal checks from the joint checking accounts payable to cash in the amounts of $ 100, $ 9,238.75, and $ 350, respectively, for a total of $ 9,688.75. Agent Davis also requested invoices from the store's suppliers, but she received few responses. Because the suppliers no longer accepted checks from petitioner and Mr. Drummer due to the receipt of bad checks, many of the suppliers were paid in cash. During the years in issue, petitioner and Mr. Drummer failed to maintain adequate records of *225 their personal finances or business activities. In order to reconstruct their income, Agent Davis met with both petitioner and Mr. Drummer during January 1990 to prepare statements of annual estimated personal and family expenses for each of the taxable years in issue. Petitioner provided Agent Davis with information on all of the family's personal living expenses that were not paid by check for 1986, 1987, and 1988. The information showed that Mr. Drummer had provided petitioner with cash to pay for groceries, laundry, dues, gasoline and automobile maintenance, allowances for the children, beauty supplies, recreational activities, doctors' bills, prescriptions, and mortgage payments. Upon completion of the statements, petitioner and Mr. Drummer reviewed them and verified that they were accurate. Petitioner and Mr. Drummer never indicated that they were separated or in the process of obtaining a divorce. Mr. Drummer never indicated that his home was at any location other than the Wright Road residence. Petitioner and Mr. Drummer claimed that they knew that the 1986, 1987, and 1988 returns were due, but merely had not filed them. Mr. Drummer stated in the initial interview that *226 he did not file the returns because he did not have the money to pay the taxes. Both petitioner and Mr. Drummer claimed that they wanted to "straighten out their tax situation". As a result of the investigation, Agent Davis concluded that the only wage income petitioner had for the years in issue was the $ 9,821.83 which was reflected on a Form W-2 from the City of New Orleans for taxable year 1986 during which petitioner was employed by the Director of Finance. In addition, Agent Davis concluded that the only income received by petitioner and Mr. Drummer from a nontaxable source was a loan of $ 203,000 received during 1987 to refinance the Wright Road residence. During July 1990, Agent Davis conducted a closing conference with petitioner and Mr. Drummer. Agent Davis presented a report of the findings of her examination to petitioner and Mr. Drummer. Agent Davis explained how she had reconstructed their income using the source and application of funds method. Petitioner and Mr. Drummer had no objection to the method, but were distraught over the amount of tax due. Shortly after the conference, Agent Davis contacted petitioner by telephone to see if petitioner and Mr. Drummer *227 agreed with the report. Petitioner explained that she and Mr. Drummer had recently obtained a divorce and that she could not agree to the report since Mr. Drummer was not paying any child support, and she did not have any money. Respondent issued two notices of deficiency based on Agent Davis' reconstruction of petitioner's income: The first notice was addressed to both petitioner and Mr. Drummer and was for taxable year 1986, using married, filing jointly status, and the second notice was addressed only to petitioner and was for taxable years 1987 and 1988, using married, filing separately status. Respondent determined that petitioner had underreported her income by $ 24,544, $ 47,360, and $ 54,002 for taxable years 1986 through 1988, respectively. Respondent also determined additions to tax for fraud and for failure to pay estimated tax for all years in issue as well as an addition to tax for substantial understatement of income tax for taxable year 1986. OPINION Community Income
Petitioner contends that section 66 relieves her of liability for Federal income taxes on her portion of community income. Specifically, petitioner contends that section 66(b) applies to her *228 1986 taxable year and section 66(a) applies to her 1987 and 1988 taxable years. Respondent contends that petitioner is not entitled to relief under section 66 during any of the years in issue. We hold that petitioner has the burden of proof. [7] Rule 142(a). *229 Upon satisfaction of certain conditions, section 66 modifies the treatment of community income. Section 66(a) addresses the treatment of community income in the case of spouses who live apart. Section 66(b), on the other hand, allows the Secretary to deny community property benefits where one spouse fails to notify the other spouse of community income. [8] Section 66(b) provides the following: The Secretary may disallow the benefits of any community property law to any taxpayer with respect to any income if such taxpayer acted as if solely entitled to such income and failed to notify the taxpayer's spouse before the due date (including extensions) for filing the return for the taxable year in which the income was derived of the nature and amount of such income.
Louisiana is a community property state. La. Civ. Code Ann. art. 2334 (West 1985). Community property is defined under Louisiana *230 law as "property acquired during the existence of the legal regime [the marriage] through the effort, skill or industry of either spouse, * * * and all other property not classified by law as separate property." La. Civ. Code Ann. art. 2338 (West 1985). Louisiana law provides a rebuttable presumption that all income or property acquired during the marriage is community property. La. Civ. Code Ann. art. 2340 (West 1985). As petitioner has not challenged such presumption, we proceed on the basis that all of the unreported income for taxable years 1986 through 1988 constitutes community income. Individuals who are married to each other and reside in a community property State, such as Louisiana, must each report one-half of their community income (if they file separately) for Federal income tax purposes. United States v. Mitchell, 403 U.S. 190 (1971). Accordingly, absent relief under section 66, petitioner is liable for Federal income taxes on one-half of the community income.[9]
*231 Petitioner contends that section 66(b) "relieves" her of liability for taxes on her portion of community income for taxable year 1986. [10] *232 We do not agree. Section 66(b) is not a relief provision as argued by petitioner. As we read section 66(b), the benefits of community property law (i.e., the allocation of half of the married couple's community income to the other spouse) is denied to a taxpayer who does not notify his or her spouse of community income. In other words, section 66(b) prevents a taxpayer from avoiding tax on one-half of community income if the taxpayer treated the income as solely his or hers and failed to notify his or her spouse of the nature and amount of the income prior to the due date of the return. Consequently, section 66(b) is not a "relief" provision. [11]Rutledge v. Commissioner, T.C. Memo. 1992-52, affd. without published opinion 4 F.3d 990 (5th Cir. 1993); see Tseng v. Commissioner, T.C. Memo. 1994-126. Accordingly, the unreported income is community income, and petitioner is liable for taxes on one-half of such income for taxable year 1986. As to taxable years 1987 and 1988, petitioner contends that section 66(a) insulates *233 her from liability for taxes on her one-half of the community income for such years. Section 66(a) provides the following: -If- (1) 2 individuals are married to each other at any time during the calendar year; (2) such individuals- (A) live apart at all times during the calendar year, and (B) do not file a joint return under section 6013 with each other for a taxable year beginning or ending in the calendar year; (3) one or both of such individuals have earned income for the calendar year which is community income; and (4) no portion of such earned income is transferred (directly or indirectly) between such individuals before the close of the calendar year,
then, for the purposes of this title, any community income of such individuals for the calendar year shall be treated in accordance with the rules provided by section 879(a). [12]
*234 Petitioner argues that section 66(a) attributes all of the income and deductions from the businesses and the rental properties to Mr. Drummer and, therefore, she is not liable for taxes on such income. Respondent does not dispute that petitioner satisfies paragraphs (1), 2(B), and (3) of section 66(a). Respondent, however, contends that petitioner has failed to satisfy paragraphs 2(A) and (4). Respondent contends that the evidence does not support the conclusion that petitioner lived apart from Mr. Drummer at all times during 1987 and 1988. Respondent further contends that a large portion of earned income was transferred to petitioner during both 1987 and 1988. We agree with respondent. The only evidence in the record that petitioner and Mr. Drummer lived apart at all times during 1987 and 1988 is the testimony of petitioner and her daughter, Laquitter. Their testimony, however, is inconsistent with other evidence contained in the record. From the time Agent Davis began her investigation during October 1989 until after the closing conference in July 1990, neither petitioner nor Mr. Drummer ever mentioned that they had separated in 1986. Indeed, when Agent Davis met with *235 petitioner and Mr. Drummer in January 1990 to complete a statement of personal living expenses, it was petitioner who provided most, if not all, of the information Agent Davis requested, and petitioner never indicated that the personal expenses reflected expenses of more than one household. We need not accept at face value the self-serving, uncorroborated testimony of petitioner and her daughter if it is questionable, improbable, or unreasonably. Quock Ting v. United States, 140 U.S. 417, 420-421 (1891); Fleischer v. Commissioner, 403 F.2d 403, 406 (2d Cir. 1968), affg. T.C. Memo. 1967-85; Boyett v. Commissioner, 204 F.2d 205, 208 (5th Cir. 1953), affg. a Memorandum Opinion of this Court; Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). In light of petitioner's failure to mention to Agent Davis her alleged separation from petitioner during 1987 and 1988 and her failure to indicate that the personal expenses were for more than one household, we find the testimony of petitioner and her daughter to be questionable. Accordingly, we *236 hold that petitioner has failed to prove that she lived apart from her husband at all times during 1987 through 1988. Consequently, petitioner is not entitled to relief under section 66(a). Petitioner also fails to satisfy section 66(a) because she has failed to establish that no portion of their earned income was transferred between them before the close of the 1987 and 1988 calendar years. As mentioned above, all of the bank accounts at Liberty Bank were joint accounts over which petitioner had signatory authority. Petitioner wrote checks from all of the accounts [13] for both personal and business expenses using money that had been deposited into the accounts by Mr. Drummer. *237 Petitioner contends that transfers of de minimis amounts as well as transfers for the benefit of dependent children are to be disregarded when considering whether she has satisfied section 66(a)(4). [14] Even disregarding such amounts, we find that significant transfers were made from Mr. Drummer to petitioner for her benefit. *238 Mr. Drummer furnished funds during 1987 through 1988 which enabled petitioner to buy clothing, pay the beauty parlor, enjoy cable television, and make sizable charitable donations to the church. Mr. Drummer further provided funds to pay the mortgage on the Wright Road residence, where petitioner lived until 1990. Additionally, petitioner and Mr. Drummer opened a home health care business during 1989 with $ 4,500 that Mr. Drummer provided petitioner with during 1988. Such transfers were made for petitioner's benefit during 1987 through 1988 and were not de minimis. Petitioner contends the facts in the instant case are similar to those in Rutledge v. Commissioner, T.C. Memo. 1992-52, affd. without published opinion 4 F.3d 990 (5th Cir. 1993). In Rutledge, the taxpayer did not write checks on the joint account and did not make any withdrawals. The taxpayer and his spouse did not communicate, and a court order prevented the taxpayer from obtaining access to the joint account. By contrast, in the instant case, the record establishes that petitioner wrote checks on many of the accounts. Indeed, petitioner wrote almost *239 all of the checks on some of the accounts, [15] and all of the money in the accounts was the result of deposits made by Mr. Drummer. We hold that such deposits constitute transfers to petitioner. Accordingly, as petitioner has failed to satisfy the conditions of section 66(a), she is liable for taxes on her one-half share of community income. Additions to Tax for Fraud
Respondent determined that petitioner was liable for the additions to tax for fraud pursuant to section 6653(b) for all taxable years in issue. Section 6653(b) provides for an addition to tax of 50 percent of the amount of an underpayment for taxable years 1986 and 1987 and 75 percent of the amount of an underpayment for taxable year 1988. [16] Section 6653(b)(1)(B) also provides for an addition to tax in the amount of 50 percent of the interest payable with respect to the portion of the understatement attributable to fraud for taxable years 1986 and 1987. *240 "Fraud is defined as an intentional wrongdoing designed to evade tax believed to be owing." DiLeo v. Commissioner, 96 T.C. 858, 874 (1991), affd. 959 F.2d 16 (2d Cir. 1992). The existence of fraud is a question of fact to be resolved upon consideration of the entire record. Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Fraud will never be presumed. Beaver v. Commissioner, 55 T.C. 85, 92 (1970). Respondent has the burden of proving fraud by clear and convincing evidence. Sec. 7454(a); Rule 142(b). To establish petitioner's liability for the additions to tax for fraud, respondent must prove that petitioner underpaid her taxes for each of the years in issue. DiLeo v. Commissioner, supra at 873; Parks v. Commissioner, 94 T.C. 654, 660-664 (1990); Hebrank v. Commissioner, 81 T.C. 640, 642 (1983). Petitioner does not contest the fact that she underpaid her taxes for each *241 of the years in issue. Respondent also has the burden of proving that petitioner had the requisite fraudulent intent. DiLeo v. Commissioner, supra at 873; Parks v. Commissioner, supra at 664-665; Hebrank v. Commissioner, supra at 642. Respondent's burden is met by a showing that petitioner intended to conceal, mislead, or otherwise prevent the collection of taxes. Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d Cir. 1968); Katz v. Commissioner, 90 T.C. 1130, 1143 (1988); Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983). Fraudulent intent may be proved, however, by circumstantial evidence because direct proof of the taxpayer's intent is rarely available. DiLeo v. Commissioner, supra at 874-875; Parks v. Commissioner, supra at 664; Rowlee v. Commissioner, supra.The taxpayer's entire course of conduct may establish the requisite fraudulent intent. Stephenson v. Commissioner, 79 T.C. 995, 1005-1006 (1982), *242 affd. 748 F.2d 331 (6th Cir. 1984); Stone v. Commissioner, 56 T.C. 213, 223-224 (1971). In Bradford v. Commissioner, 796 F.2d 303, 307-308 (9th Cir. 1986), affg. T.C. Memo. 1984-601, the Ninth Circuit Court of Appeals enunciated a nonexhaustive list of factors which demonstrate fraudulent intent. These "badges of fraud" include: (1) Understating income; (2) maintaining inadequate records; (3) failing to file tax returns; (4) providing implausible or inconsistent explanations of behavior; (5) concealing assets; (6) failing to cooperate with the tax authorities; (7) engaging in illegal activities; (8) attempting to conceal illegal activities; (9) dealing in cash; and (10) failing to make estimated tax payments. Recklitis v. Commissioner, 91 T.C. 874, 910 (1988). Respondent contends that the following acts, when viewed as a whole, establish petitioner's fraudulent intent: (1) Petitioner's understatement of income during 10 out of the 12 years spanning 1977 through 1988; (2) petitioner's failure to file tax returns for taxable years 1977 *243 through 1983 and 1986 through 1988; (3) petitioner's failure to keep adequate records, especially in light of Agent Atkins' warning; (4) petitioner's implausible explanations of her behavior; (5) petitioner's extensive dealings in cash; and (6) petitioner's failure to make estimated tax payments. Petitioner offers explanations to refute the inferences of fraud as to each badge, which we address in turn. Respondent's first contention is that petitioner's understatement of income during 10 out of 12 years from 1977 through 1988 is evidence of fraudulent intent. Petitioner contends that the mere failure to report income is insufficient to establish fraud. We do not accept petitioner's contention in the instant case. Although the mere failure to report income is insufficient to prove fraud, a pattern of consistent underreporting of income like the pattern involved in the instant case, when accompanied by other circumstances showing an intent to conceal, justifies the inference of fraud. Holland v. United States, 348 U.S. 121, 137 (1954); Parks v. Commissioner, supra at 664. Respondent next contends that petitioner's *244 continuous failure to file is evidence of fraud. The parties stipulated that petitioner did not file returns for taxable years 1977 through 1983 as well as for taxable years 1986 through 1988. Petitioner contends that the failure to file, without more, does not establish fraudulent intent. Although the mere failure to file does not per se establish fraud, the failure to file over an extended period of time is persuasive evidence of intent to defraud the Government. Marsellus v. Commissioner, 544 F.2d 883, 885 (5th Cir. 1977), affg. T.C. Memo. 1975-368; Stoltzfus v. United States, supra at 1005. Moreover, petitioner's failure to file returns for taxable years 1986, 1987, and 1988, in light of her previous filing of Federal income tax returns for taxable years 1984 and 1985, weighs heavily against her. Castillo v. Commissioner, 84 T.C. 405, 409 (1985). We also note that, during the first audit, petitioner admitted that she knew tax returns were due annually. We conclude that petitioner failed to file returns as an attempt to conceal income. Respondent's *245 next contention is that petitioner's failure to keep adequate books and records establishes fraud. Petitioner contends that Mr. Drummer "ran" the store and controlled all of the books and records and that, therefore, the maintenance of adequate books and records was beyond her control. We disagree with petitioner. By petitioner's own admission, she had access to all of the joint checking accounts. Petitioner knew her husband was making deposits of the profits from the businesses and the rental properties into the accounts. Petitioner had been forewarned by Agent Atkins that she had a duty to keep adequate records. Despite such warning, she failed to maintain adequate records. Even if petitioner did not have access to all of the information at the businesses, she could have kept records with respect to the transactions that she did handle. Consequently, we find that petitioner's failure to maintain adequate records is evidence of fraud. Respondent next contends that petitioner has provided inconsistent and implausible explanations of her behavior. Specifically, respondent contends that petitioner's statements in her sworn affidavit [17] are implausible in light of the hundreds *246 of checks she wrote for her personal benefit. Petitioner contends that her statement in the affidavit referred to her lack of control over the business accounts only and did not refer to her use of the personal accounts. We believe that petitioner was not merely referring to the business accounts when she used the term "joint accounts" in her affidavit. Indeed, the record indicates that petitioner wrote checks on the business accounts as well as the personal accounts. We conclude that petitioner had at least some control over the business accounts. Based on the foregoing, we find that petitioner's inconsistent explanations are indicative of fraud. Respondent also contends that petitioner's extensive use of cash is indicative of fraud. Petitioner does not dispute that she dealt in cash extensively. In fact, *247 petitioner regularly obtained cash from Mr. Drummer for personal expenses and was knowledgeable regarding the amount of cash spent for specific household items. We conclude that petitioner's use of cash was a mechanism to conceal income. Lastly, respondent contends that petitioner's failure to make estimated tax payments is probative of fraud because petitioner's frequent writing of checks to a variety of creditors (including a payment to the IRS for employment taxes) indicates her awareness of her responsibility to pay creditors during 1986 through 1988. Petitioner contends that, because she had limited access to the businesses, she was unable to make estimated payments or to accurately determine the amount of such payments. We do not believe petitioner's explanation. As we have previously stated, the record reflects that petitioner wrote checks covering thousands of dollars each year, indicating her involvement with the business and the rental properties. She wrote checks to many different creditors, but never paid taxes even though she knew taxes were due. Accordingly, we find that petitioner's failure to make estimated payments is also indicative of her fraudulent intent. *248 Considering petitioner's entire course of conduct, we hold that respondent has proved by clear and convincing evidence that the entire amount of each underpayment is due to fraud. Accordingly, we hold that petitioner is liable for the fraud additions to tax for each of the taxable years in issue. Additions to Tax for Failure To Make Estimated Payments
Respondent determined that petitioner is liable for additions to tax under section 6654 for failure to pay estimated tax due during the years in issue. The addition to tax is mandatory unless the taxpayer establishes that one of certain narrow exceptions applies. Grosshandler v. Commissioner, 75 T.C. 1, 20-21 (1980); Estate of Ruben v. Commissioner, 33 T.C. 1071-1072 (1960). Petitioner has failed to establish that she fits within one of the exceptions. Accordingly, we sustain the additions to tax under section 6654 for taxable years 1986 through 1988. Addition to Tax for Substantial Understatement of Income Tax
Section 6661(a) imposes an addition to tax on a substantial understatement of income tax. An understatement is substantial where it exceeds the *249 greater of 10 percent of the tax required to be shown on the return or $ 5,000. Sec. 6661(b)(1)(A). Petitioner had a substantial understatement for taxable year 1986. The section 6661 addition to tax is not applicable, however, if there was substantial authority for the taxpayer's treatment of the items in issue or if the relevant facts relating to the tax treatment were adequately disclosed on the return. Sec. 6661(b)(2)(B)(i) and (ii). Petitioner has not made any arguments regarding the substantial understatement addition to tax. Accordingly, we hold that petitioner is liable for the addition to tax under section 6661. All other arguments of petitioner have been considered and are found to be without merit. To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. 50 percent of the interest due on the deficiency.↩
1. The notice of deficiency for 1987 lists that La Parisienne Liquor and Food Mart's expenses (including purchases) as used to reconstruct petitioner's income under the source and application method were $ 190,908.65. The parties, however, stipulated that the expenses were $ 190,123.43. Based on the stipulation, respondent concedes the difference of $ 785.22.↩
2. Petitioner and Mr. Drummer operated the body shop only during 1986 and 1987.↩
3. Petitioner and Mr. Drummer owned rental properties at the following locations in New Orleans during 1986, 1987, and 1988: 1717, 1719, 1725-1730, and 1734 Bayou Road; 1212, 1214, and 1216 North Derbigny; and 1241 and 1243 N. Claiborne. Throughout the years in issue, the properties were mortgaged.↩
4. The term "checking accounts" includes both personal and business accounts.↩
5. The following chart is a sampling of various payees to which petitioner wrote checks along with the amounts and corresponding totals: Payee
1986
1987
1988
Total
D.H. Holmes
$ 642.60
$ 305.00
$ 157.19
$ 1,104.79
Maison Blanche/Gauchaux's
1,554.15
662.94
609.84
2,826.93
Nathalie's Fashion Shoppe
343.50
93.50
-
437.00
Kelly School of Dance
45.00
- -
45.00
Krauss Department Store
442.98
292.82
281.72
1,017.52
Greater St. Stephen
4,200.50
3,586.00
3,174.00
10,960.50
Baptist Church
Evelyn's Beauty Shop
570.00
309.00
205.00
1,084.00
Sak's Fifth Avenue
30.00
13.87
-
43.87
Gus Mayer's
930.00
816.00
286.00
2,032.00
Cox Cable Television
110.78
239.65
269.59
620.02
Hurwitz-Mintz Furniture
275.00
352.72
-
627.72
Company
St. Mary's Academy
-
642.50
695.50
1,338.00
Macy's
-
80.00
161.51
241.51
Kentwood Spring Water
60.34
125.01
125.59
310.94
Totals
9,204.85
7,519.01
5,965.94
22,689.80
Petitioner also wrote checks for insurance, mortgages, water service, utilities, gifts, travel, newspapers, dues, and miscellaneous personal and family expenses.↩
6. The following chart reflects the dollar amounts of checks written by petitioner (the top figure) compared to the total dollar amounts written on the account (the bottom figure). Account #
1986
1987
1988
444-1281
$ 17,318.60
closed
closed
(personal) Some checks for the businesses were written on this account.
[1]
48,638.54
545-2762
24,540.56
$ 33,814.02
$ 52,339.90
(personal) [1]
51,667.50
164,651.57
67,227.16
215-7616
110.97
2,656.10
2,632.47
(store)
211,168.87
141,855.23
137,352.00
213-3695
40,836.11
11,143.30
The total dollar amount written on this account during 1988 is not a part of the record.
[2]↩ -0-  (rental
42,957.25
29,019.88
properties)
217-2321
0
closed
closed
(body shop)
23,925.05
7. Petitioner devotes a substantial portion of her brief to her contention that the burden of proof should be shifted to respondent because the notices of deficiency are arbitrary. She argues that: (1) The source and application of funds method of reconstruction of income is an inadequate method of determining income; (2) that respondent failed to interview petitioner regarding community income; (3) that respondent did not consider whether sec. 66 applied to petitioner's case; (4) that respondent ignored evidence of petitioner's noninvolvement in the businesses; and (5) that respondent failed to calculate accurately under her chosen method. We treat petitioner's argument as one for shifting the burden of going forward with the evidence to respondent. See Schaeffer v. Commissioner, T.C. Memo. 1994-206. The record in the instant case contains direct evidence of petitioner's involvement with income-producing activities during the taxable years in issue. The instant case is distinguishable from the "naked assessment" cases in which the Government has been required to show the taxpayer's connection with certain illegal income-producing activities before the notice will be presumed correct. In the instant case, we hold that the burden of going forward with the evidence does not shift to respondent. The record indicates that petitioner and her husband managed several businesses, including rental properties, during 1986 through 1988, the expenses for which were paid by checks written by petitioner. We see no need to look behind the notices of deficiency in the instant case and hold that petitioner has the burden of proof.↩
8. As petitioner has not raised the applicability of sec. 66(c) for any of the years in issue, we do not address sec. 66(c).↩
9. For taxable year 1986, respondent issued a notice of deficiency jointly to petitioner and Mr. Drummer based on an unsigned joint 1986 Federal income tax return that was submitted to respondent. In the case of a married couple who elects to make a joint return, "the tax shall be computed on the aggregate income and the liability with respect to the tax shall be joint and several". Sec. 6013(d)(3). Accordingly, the $ 24,544 amount listed in the notice of deficiency as unreported income reflects the total amount of unreported income of petitioner and Mr. Drummer and not merely petitioner's one-half share of their community income. The parties have stipulated that petitioner did not file an individual income tax return, either separately or jointly, for any of the taxable years in issue. Accordingly, based upon such stipulation, petitioner is not jointly and severally liable with Mr. Drummer for Federal income taxes for taxable year 1986. Consequently, absent relief under sec. 66, petitioner is liable for taxes on only her one-half portion of the $ 24,544 of unreported income. We note that respondent properly allocated only one-half of the community income of petitioner and Mr. Drummer to petitioner for taxable years 1987 and 1988.↩
10. Because petitioner and Mr. Drummer did not live apart at all times during the 1986 calendar year, petitioner concedes that sec. 66(a) is inapplicable for taxable year 1986. Consequently, we do not address sec. 66(a) for that year.↩
11. Even if we were to construe sec. 66(b) as reallocating petitioner's one-half of the community income to Mr. Drummer, as petitioner argues, petitioner would have to show that Mr. Drummer acted as though he were solely entitled to all of the community income and did not notify her of the nature and amount of such income. The record establishes that petitioner and Mr. Drummer had five joint bank accounts during 1986. Petitioner had signatory authority over all of them and wrote checks from all of them. Mr. Drummer regularly made deposits of money from the various businesses and the rental properties into the accounts. Indeed, during 1986 petitioner wrote checks in the amount of $ 41,859.16 on the personal accounts and in the amount of $ 40,947.08 on the business accounts. Mr. Drummer also provided petitioner with cash during taxable years 1986 through 1988. The evidence suggests that Mr. Drummer did not treat such income as his own and that petitioner was on notice of the nature and amounts of such income.↩
12. Sec. 879(a) provides for the tax treatment of community income of nonresident, alien individuals with respect to trade or business income. Sec. 879(a)(2) provides that trade or business income shall be treated as provided in sec. 1402(a)(5). Sec. 1402(a)(5) provides that community income derived from a trade or business shall be treated as belonging to the husband unless the wife exercises substantially all of the management and control over such trade or business.↩
13. While petitioner has asked this Court to focus on the fact that petitioner wrote significantly more checks on the personal accounts than the business accounts, we fail to see how that would benefit petitioner's position. Our inquiry is whether money was transferred from Mr. Drummer to petitioner, and the accounts out of which petitioner primarily wrote checks are of little or no significance.↩
14. S. Rept. 96-1036, at 8 (1980), states the following: For purposes of the * * * income transfer test, the [Senate Finance] committee intends that transfers of de minimis amounts or value are not to be taken into account. It is anticipated that definitive guidance concerning these amounts will be prescribed in Treasury regulations, revenue rulings, or revenue procedures, and periodically revised as circumstances may warrant. Further, a transfer or payment to, or for the benefit of, the couple's dependent child is not to be treated as an indirect transfer to an abandoned spouse solely because the payment or transfer satisfies an obligation of support imposed on the abandoned spouse. To date, no regulations have been issued with respect to sec. 66.↩
15. See supra↩ note 6.
16. For taxable years 1986 and 1987, the specific Code section which sets forth the addition to tax for fraud is sec. 6653(b)(1)(A). For taxable year 1988, the specific Code section which sets forth the addition to tax for fraud is sec. 6653(b)(1).↩
17. In the affidavit, petitioner stated that she had no control over the bank accounts since 1985 and had not made any withdrawals or applied any part of the money deposited by Mr. Drummer to her benefit.↩